**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| S.M.F. GROUP, INC., *et al.*,[1] | Case No. 26-11893 (SAB) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PETER HURWITZ IN SUPPORT OF ORDER (I) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Peter Hurwitz, declare as follows:

1. I am the independent director (the "**Independent Director**") of S.M.F. Group Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), appointed effective as of October 4, 2026, as set forth in the Retention Motion (as defined below).

2. I submit this declaration (the "**Declaration**") in support of the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the*

[1] The Debtors and the last four digits of their federal tax identification numbers are: (1) S.M.F. Group Inc. (1726); (2) 57th Street Hospitality Partners, LLC (2026); (3) Brasserie 57 LLC (6251); (4) Broadway Hospitality Venture, LLC (5541); (5) Brooklyn Diner USA, Inc. (1194); (6) Brooklyn Diner USA, L.P. (9292); (7) Cafe Concepts (Washington DC), LLC (3827); (8) Cieli Partners, L.P. (7771); (9) Ebbets Field Venture, LLC (9637); (10) Ebbets Field Venture II, LLC (2344); (11) Fireman Hospitality Card LLC (4763); (12) Fiorello's Roman Cafe, Inc. (2519); (13) Italian Cafe Concepts, LLC (3784); (14) Red Eye/Brooklyn Associates, L.P. (9293); (15) Red Eye Grill, Inc. (1189); (16) Red Eye Grill, L.P. (9291); (17) SFAP Group, LLC (9152); (18) Shelny, LLC (1859); (19) SMJ Group, Inc. (1191); (20) SMJ Group, L.L.C. (3319); (21) The Finer Diner, LLC (1940); and (22) The Fireman Group Cafe Concepts, Inc. (5919). The Debtors' mailing address is 810 Seventh Avenue, Suite 615, New York, NY 10019.

*Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (ECF No. 58) (the "**Sale Motion**"), and in support of the Debtors' request for entry of an order (the "**Sale Order**") approving the sale (the "**Sale**") of certain of the Debtors' assets to FHG Acquisition, LLC ("**FHG Acquisition**" or the "**Successful Bidder**"). Capitalized terms used but not defined in this Declaration have the meanings given to them in the Sale Motion, the Bidding Procedures Order (defined below), or the *Declaration of Richard Klein of Hilco Corporate Finance, LLC* filed concurrently herewith (the "**Klein Declaration**"), as applicable.

3. Except where otherwise stated, the statements in this Declaration are based on my personal knowledge, my review of the Debtors' books and records and of documents filed in these chapter 11 cases, information provided to me by the Debtors' officers or advisors, including the Debtors' chief restructuring officer (the "**CRO**"), the Debtors' investment banker, Hilco Corporate Finance, LLC ("**Hilco**"), and the Debtors' counsel, and/or my opinion based on my experience as a restructuring professional. I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtors. If called to testify, I could and would testify competently to the matters set forth herein.

## BACKGROUND AND QUALIFICATIONS

4. I am a Principal of Dundon Advisers, a global strategic restructuring advisory firm, which I joined in 2018, and I am the head of its unsecured creditors practice, which I have helped build to be one of the most successful and recognized in the industry. I regularly serve as an independent director or manager, liquidating trustee, litigation trustee, and plan administrator for companies in financial distress as set forth in my declaration filed on October 5, 2026 [ECF No. 238-4] (the "**Retention Declaration**") and my supplemental declaration filed contemporaneously herewith.

## APPOINTMENT AS INDEPENDENT DIRECTOR

5. Pursuant to the order entered by the Court on September 4, 2026 [ECF No. 104] (the "**Bidding Procedures Order**"), the Debtors have conducted a marketing, sale, and auction process (the "**Sale Process**") for substantially all of their assets in accordance with the bidding procedures approved by that order (the "**Bidding Procedures**"). FHGRF LLC ("**FHGRF**"), the lender under the Debtors' postpetition debtor-in-possession financing facility (the "**DIP Facility**"), was a Qualified Bidder in the Sale Process and submitted a bid to acquire substantially all of the Debtors' assets by credit bid pursuant to a chapter 11 plan. I understand that the Debtors' chief executive officer, Benjamin Grossman, owns 35.8% of the common interests in FHGRF and that the FHGRF bid contemplated that Mr. Grossman would continue as chief executive officer after confirmation of that plan.

6. In light of Mr. Grossman's interest in FHGRF and potential conflict with respect to the FHGRF bid, the Debtors determined to appoint an independent director to exercise independent judgment over the Sale Process and any transaction involving FHGRF or its affiliates. I understand that counsel to the Official Committee of Unsecured Creditors (the "**Committee**") suggested the Debtors consider me for the role, and that other candidates were considered as well. By written consents of each Debtor's board, manager, or general partner, as applicable, dated as of October 4, 2026 (the "**Resolutions**"), I was appointed to the governing body of each Debtor and as the sole member of a conflicts committee (the "**Conflicts Committee**") with sole and exclusive authority (the "**Conflicts Authority**") over all Conflicts Matters, which the Resolutions define to include all matters relating to FHGRF in any capacity, FHGRF's prepetition note, the DIP Facility, and the Sale Process. In exercising the Conflicts Authority, I am not subject to the supervision or direction

of any other person or entity, and the Debtors may not act on a Conflicts Matter absent my approval.

7. On October 5, 2026, the Debtors filed a motion to approve my employment and retention as Independent Director effective as of October 4, 2026 [ECF No. 238] (the "**Retention Motion**"), which motion is calendared for hearing on October 21, 2026.

8. As set forth in the Retention Declaration, before my engagement I had no connection to or relationship with the Debtors, FHGRF, Mr. Grossman, or any other officer, director, manager, member, or equity holder of the Debtors, and I have no relationship with FHG Acquisition, TREW Capital Management, LLC ("**TREW**"), Landry's LLC ("**Landry's**"), or any of their affiliates.

**PRIOR TO THE AUCTION**

9. Beginning on October 3, 2026, continuing throughout October 4, 2026, and in advance of the commencement of the Auction on October 5, 2026, I received briefings and information from the Debtors' investment bankers, chief restructuring officer, and counsel regarding the Debtors' circumstances, the Sale Process and the bids received, and the issues faced by the Debtors when pursuing approval of the DIP Facility. Among other things, I reviewed the Bidding Procedures Order and the Bidding Procedures; the order approving the Stalking Horse Bid [ECF No. 201] and the Stalking Horse APA [ECF No. 189-2]; the FHGRF APA; and Hilco's summary of its marketing efforts. Without limiting the foregoing, Hilco reported to me on its marketing outreach efforts and the status of the Sale Process, including that two bids had been received by the September 29, 2026 bid deadline: the Stalking Horse Bid of FHG Acquisition, with cash consideration of $9,500,000, and the FHGRF Bid, a credit bid of the DIP Facility obligations and FHGRF's prepetition secured debt for substantially all of the Debtors' assets. I engaged with

the Debtors' investment bankers, chief restructuring officer, and counsel on the information provided and on the issues facing the Debtors, and also had discussions with Committee counsel concerning the Debtors' cases and circumstances. By the commencement of the Auction, I was prepared to make informed decisions on behalf of the Debtors.

10. Before my appointment, the Debtors had authorized FHG Acquisition to partner with TREW in order to improve its bid and facilitate competitive bidding against the FHGRF Bid. I was made aware of that authorization before the start of the Auction and concurred with it. I understand that this authorization and partnership were disclosed to FHGRF before the Auction.

11. I treated the Sale Process, the Auction, and the FHGRF Bid as Conflicts Matters subject to my Conflicts Authority. Mr. Grossman did not participate in the Debtors' evaluation of the bids or in the Debtors' decisions at the Auction. FHGRF participated in the Sale Process and the Auction only as a bidder, through its own counsel and representatives.

**THE AUCTION AND THE SUCCESSFUL BID**

12. The Auction was held on October 5, 2026 in accordance with the Bidding Procedures. I attended the Auction in person and was the sole decision maker for the Debtors, assisted by the CRO, Hilco, and the Debtors' counsel, and in consultation with the Committee, through its counsel. The Auction was transcribed. Over 15 rounds of bidding, FHG Acquisition, in partnership with TREW, and FHGRF each improved their bids. Ultimately, after FHG Acquisition had submitted a further overbid, FHGRF declined to submit any further topping bid.

13. At the conclusion of the bidding, I determined on behalf of the Debtors, in consultation with the Committee, through its counsel, that the bid of FHG Acquisition, in partnership with TREW, was the Successful Bid. The Successful Bid provides cash consideration to the Debtors of $22,237,000, plus the assumption of cure costs and other liabilities, on the terms

of the Stalking Horse APA as modified at the Auction. FHGRF declined to serve as the backup bidder. The Auction result is a substantial improvement over the stalking horse bid, which provided for $9,500,000 of cash consideration. The modifications agreed at the Auction were read into the record of the Auction and are reflected in the amended and restated asset purchase agreement filed with the Court on October 20, 2026 [ECF No. 299] (the "**Final APA**").

14. In determining that the Successful Bid was the highest or otherwise best bid for the Purchased Assets, I considered, among other things: (a) the amount and form of the consideration, including that the Successful Bid is payable in cash whereas the FHGRF Bid was a credit bid that required confirmation of a chapter 11 plan, which carried additional execution risk; (b) the liabilities to be assumed by each bidder, including cure costs and potential WARN liabilities; (c) the treatment of the Debtors' employees, executory contracts, and unexpired leases under each bid; and (d) the certainty and timing of closing, including each bidder's financial capacity to close.

15. Certain non-operating assets of the Debtors, including litigation claims (including any claims against payment processors or merchant cash advance funders) and any claims of the Debtors' estates against FHGRF, Mr. Grossman, or their affiliates, are not Purchased Assets and were not sold at the Auction. Any disposition of such a claim that is a Conflicts Matter will be subject to my Conflicts Authority.

**GOOD FAITH**

16. I believe that the Successful Bid is the product of arm's-length negotiation between the Debtors, acting through their advisors and under my direction, and FHG Acquisition and TREW, as represented by their counsel. I am not aware of any fraud or collusion among the Debtors, the Successful Bidder (in partnership with TREW as noted above), FHGRF, or any other

party in connection with the Sale Process or the Auction, or of any agreement among the bidders to control the price at the Auction.

**BUSINESS JUDGMENT**

17. The Debtors are operating at a loss and have liquidity under the budget for the DIP Facility only through month end. The Sale preserves the Debtors' restaurant operations as going concerns and the jobs of approximately 800 employees. I am not aware of an alternative transaction, or of a plan process, that would yield greater value for the Debtors' estates on the timeline of the Successful Bid.

18. I determined, on behalf of the Debtors, to accept the Successful Bid and to seek approval of the Sale on the terms of the Final APA because, based on the Sale Process as reported to me by Hilco, the competitive bidding I observed at the Auction, the Debtors' liquidity, and the advice of the Debtors' advisors, I concluded that the Sale is in the best interests of the Debtors, their estates, and their creditors and is the highest or otherwise best transaction reasonably available to the Debtors. My purpose in authorizing the Sale was to maximize the value of the Debtors' assets for the benefit of their estates and creditors; I did not authorize it to hinder, delay, or defraud any creditor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 20, 2026

*/s/ Peter Hurwitz*
Peter Hurwitz