**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| S.M.F. GROUP, INC., *et al.*,[1] | Case No. 26-11893 (SAB) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF RICHARD KLEIN OF HILCO CORPORATE FINANCE, LLC IN SUPPORT OF ORDER (I) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Richard Klein, declare as follows:

1. I am an Executive Director and Head of Special Situations of Hilco Corporate Finance, LLC ("**Hilco**"). I submit this declaration (the "**Declaration**") in further support of the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and Assignment Procedures, and (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [ECF No. 58] (the "**Sale Motion**"), filed by the above-captioned debtors and debtors

[1] The Debtors and the last four digits of their federal tax identification numbers are: (1) S.M.F. Group Inc. (1726); (2) 57th Street Hospitality Partners, LLC (2026); (3) Brasserie 57 LLC (6251); (4) Broadway Hospitality Venture, LLC (5541); (5) Brooklyn Diner USA, Inc. (1194); (6) Brooklyn Diner USA, L.P. (9292); (7) Cafe Concepts (Washington DC), LLC (3827); (8) Cieli Partners, L.P. (7771); (9) Ebbets Field Venture, LLC (9637); (10) Ebbets Field Venture II, LLC (2344); (11) Fireman Hospitality Card LLC (4763); (12) Fiorello's Roman Cafe, Inc. (2519); (13) Italian Cafe Concepts, LLC (3784); (14) Red Eye/Brooklyn Associates, L.P. (9293); (15) Red Eye Grill, Inc. (1189); (16) Red Eye Grill, L.P. (9291); (17) SFAP Group, LLC (9152); (18) Shelny, LLC (1859); (19) SMJ Group, Inc. (1191); (20) SMJ Group, L.L.C. (3319); (21) The Finer Diner, LLC (1940); and (22) The Fireman Group Cafe Concepts, Inc. (5919). The Debtors' mailing address is 810 Seventh Avenue, Suite 615, New York, NY 10019.

in possession (collectively, the "**Debtors**"), and the Debtors' request for entry of an order (the "**Sale Order**") approving the sale (the "**Sale**") of certain of the Debtors' assets to FHG Acquisition, LLC ("**FHG Acquisition**" or the "**Successful Bidder**").

2. The statements in this Declaration are based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records and relevant documents, (d) information provided to me by employees of Hilco working under my supervision, and/or (e) my opinions, experience and knowledge as a restructuring professional. Specifically, I have overseen the Hilco team and, in that capacity, I have been directly involved in, among other things, (i) evaluating the Debtors' financial condition, (ii) marketing the Debtors' assets, (iii) communicating with prospective bidders for the Debtors' assets, (iv) communicating with the Debtors and their advisors at all stages of the sale process (the "**Sale Process**"), and (v) assisting the Debtors in conducting the auction (the "**Auction**") on October 5, 2026.

3. Hilco is the investment banker to the Debtors in these cases. Although Hilco is or will be compensated for such work, I am not separately compensated for this Declaration or testimony. I am over the age of 18 years and I am authorized to submit this Declaration. If I were called upon to testify, I could and would competently testify to the facts and the opinions set forth herein.

## QUALIFICATIONS

4. I have over 30 years' experience advising on distressed sell-side and buy-side mergers and acquisitions transactions, recapitalizations, and restructuring transactions for middle market companies across many industries. I have advised debtors, boards of directors, official and ad hoc creditors' committees, private equity sponsors, and various creditor constituencies on a wide

array of restructurings, including Chapter 11 plans of reorganization, out-of-court restructurings, section 363 asset sales, rescue financings, and exchange offerings. I have experience across many industries, including but not limited to restaurants, aerospace and defense, consumer and retail, gaming, health care, industrial, and technology. I have extensive experience advising restaurant companies in bankruptcy, including mandates for Red Lobster, Meridian Restaurants, Uno Restaurant Holdings, One Restaurant Brands, Rubio's Restaurants, Tony Roma's and Buffet Holdings. I graduated from the University at Albany, State University of New York in 1994, having received a Bachelor of Science in Finance. I am a FINRA Registered Representative holding the Series 7, 24 and 63 licenses.

5. Hilco and its professionals have worked with financially troubled companies and their stakeholders in a variety of industries in complex financial restructurings, both in chapter 11 cases and out-of-court proceedings. Hilco's distressed investment banking professionals have served as financial advisors to companies and creditors in numerous restructurings, both in the restaurant industry and otherwise, including acting as the investment banker and/or financial advisor to debtors, creditors, and creditors' committees in cases such as: *In re Norcold LLC*, No. 25-11933 (TMH) (Bankr. D. Del. Dec. 11, 2025); *In re Pinstripes Holdings, Inc.*, No. 25-11677 (KBO) (Bankr. D. Del. Oct. 2, 2025); *In re CTN Holdings, Inc.*, No. 25-10603 (TMH) (Bankr. D. Del. May 16, 2025); *In re One Table Rest. Brands, LLC*, No. 24-11553 (KBO) (Bankr. D. Del. July 17, 2024); *In re TGI Friday's, Inc.*, No. 24-80069 (SGJ) (Bankr. N.D. Tex. Dec. 30, 2024); *In re MRRC Hold Co.*, No. 24-11164 (CTG) (Bankr. D. Del. July 8, 2024); *In re Red Lobster Mgmt., LLC*, No. 24-02486 (GER) (Bankr. M.D. Fla. June 14, 2024); *In re MusclePharm Corp.*, No. 22-14422 (NMC) (Bankr. D. Nev. Aug. 28, 2023); *In re Meridian Rests. Unlimited, LC*, No. 23-20731 (JTM) (Bankr. D. Utah Aug. 1, 2023); *In re CBC Rest. Corp.*, No. 23-10245 (KBO) (Bankr. D.

Del. June 2, 2023); *In re CiCi's Holdings, Inc.*, No. 21-30155 (SGJ) (Bankr. N.D. Tex. Mar. 1, 2021); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. July 7, 2020); *In re Krystal Co.*, No. 20-61065 (PWB) (Bankr. N.D. Ga. Jan. 19, 2020); *In re HRI Holding Corp.*, No. 19-12415 (MFW) (Bankr. D. Del. Nov. 14, 2019); *In re FTD Cos.*, No. 19-11240 (LSS) (Bankr. D. Del. June 3, 2019); *In re Kona Grill, Inc.*, No. 19-10953 (CSS) (Bankr. D. Del. May 28, 2019); *In re Willowood USA Holdings, LLC*, No. 19-11079 (KHT) (Bankr. D. Colo. Feb. 15, 2019); *In re Synergy Pharms.*, No. 18-14010 (LGB) (Bankr. S.D.N.Y. Dec. 12, 2018); *In re RM Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Aug. 30, 2018); *In re Portrait Innovations*, No. 17-31455 (JCW) (Bankr. W.D.N.C. Sept. 1, 2017); *In re Ignite Rest. Grp., Inc.*, No. 17-33550 (DRJ) (Bankr. S.D. Tex. June 6, 2017); *In re Cent. Grocers, Inc.*, No. 17-13886 (PSH) (Bankr. N.D. Ill. May 4, 2017); *In re Garden Fresh Rest. Intermediate Holding, LLC*, No. 16-12174 (CSS) (Bankr. D. Del. Oct. 7, 2016); *In re Sotera Wireless*, No. 16-05968 (LST) (Bankr. S.D. Cal. Sept. 30, 2016); *In re Rotary Drilling Tools USA, LLC*, No. 16-33433 (MI) (Bankr. S.D. Tex. July 6, 2016); *In re Golden Cnty. Foods*, No. 15-11062 (KG) (Bankr. D. Del. May 15, 2015); *In re Claim Jumper Rests., LLC*, No. 10-12819 (KG) (Bankr. D. Del. Oct. 6, 2010).

6. Hilco advises distressed businesses and their key creditor and equity-holder stakeholders in out-of-court and bankruptcy restructurings, reorganizations, and related financial advisory services. Hilco advises buyers, sellers, and other key stakeholders in all aspects of an M&A transaction. Its senior investment bankers have completed transactions in virtually all industry segments, with deep experience in diversified industrial and manufacturing (automotive, aerospace, metals/mining, packaging), energy (E&P, OFS, and infrastructure), business services, and retail/consumer (fashion/apparel, food/restaurants, media). Its professionals also have decades of experience providing the following special situation services: strategic advisory & distressed

M&A; turnaround, rescue, and chapter 11 financing; financial restructuring and reorganizations; liability management; corporate governance; Article 9 sales; and litigation support.

## THE MARKETING AND SALE PROCESS

7. On September 4, 2026, the Court entered an order [ECF No. 101] authorizing the Debtors to retain Hilco as investment banker, effective as of August 14, 2026. Since being engaged, Hilco has worked with the Debtors to pursue a comprehensive sale of all or substantially all of the Debtors' assets through these chapter 11 cases in accordance with the bidding procedures (the "**Bidding Procedures**") approved by the Court on September 4, 2026 [ECF No. 104] (the "**Bidding Procedures Order**"). Capitalized terms used but not defined herein have the meaning ascribed in the Bidding Procedures.

8. Hilco contacted 97 prospective buyers (51 financial buyers and 46 strategic buyers), and Hilco received responses from 46 of those parties. Of the 46 responding parties, 15 parties executed non-disclosure agreements and received a confidential information memorandum, access to the data room, and the opportunity to participate in management presentations or discussions and site visits. The deadline for the submission of bids under the Bidding Procedures was September 29, 2026.

## BIDS RECEIVED

9. On September 17, 2026, Hilco received on the Debtors' behalf a letter of intent from FHG Acquisition for the potential purchase of substantially all of the operating assets used in connection with the Debtors' Café Fiorello, Trattoria Dell'Arte, and Bond 45 restaurants. On September 18, 2026, Hilco received on the Debtors' behalf a draft purchase agreement from FHG Acquisition, an affiliate of Landry's LLC. Following additional due diligence and negotiations over the following days, FHG Acquisition expanded the scope of its proposed acquisition to

include certain additional tangible and intangible assets associated with the Debtors' Paris Bar, Le Jardin, Brooklyn Diner, Brooklyn Delicatessen and Café Paradiso restaurants.

10. On September 22, 2026, the Debtors filed a motion seeking approval of the FHG Acquisition bid as the stalking horse [ECF No. 189]. On September 24, 2026, the Court entered an order [ECF No. 201] approving such bid as the stalking horse bid for the applicable assets (the "**Stalking Horse Bid**") and authorizing the Debtors to enter into an asset purchase agreement with FHG Acquisition [ECF No. 189-2] (the "**Stalking Horse APA**").

11. On September 29, 2026, Hilco received on the Debtors' behalf a bid from the Debtors' DIP Lender, FHGRF, for the potential purchase of substantially all of the Debtors' assets, by credit bid pursuant to a chapter 11 plan of the DIP Facility obligations and of its prepetition secured debt, as set forth in the form of a draft purchase agreement (the "**FHGRF APA**" and such bid embodied therein, the "**FHGRF Bid**"). No other bids were received by or on behalf of the Debtors.

**<u>THE AUCTION AND THE SUCCESSFUL BID</u>**

12. Having received two bids, and after consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), the Debtors determined to proceed with the Auction to maximize the value of the Debtors' assets. In advance of the Auction, the Debtors authorized FHG Acquisition to partner with TREW Capital Management, LLC ("**TREW**") in order to be able to improve its bid and facilitate competitive bidding against the FHGRF Bid. The Debtors' independent director, Peter Hurwitz, was present for and was the sole decision maker for the Debtors at the Auction, as assisted by the Debtors' chief restructuring officer, investment bankers, and counsel.

13. The Debtors conducted the Auction on October 5, 2026 in accordance with the Bidding Procedures. After 15 rounds of competitive bidding, the Debtors, in consultation with the Consultation Parties, determined that the bid of FHG Acquisition, in partnership with TREW, was the Successful Bid, with consideration to the Debtors of $22,237,000 in cash plus the assumption of cure costs and other liabilities, all on the terms and conditions of the Stalking Horse APA as modified at the Auction. The modifications to the Stalking Horse APA agreed at the Auction were read into the record of the Auction, which was transcribed, and are reflected in the amended and restated asset purchase agreement filed with the Court on October 19, 2026 [ECF No. 299] (the "**Final APA**").

14. The assets being sold in the Successful Bid (the "**Purchased Assets**") are substantially all assets and intellectual property that are currently used or held for use in the ongoing operations of the Debtors' active restaurants, all as set forth in the Final APA. Certain executory contracts and unexpired leases of the Debtors relating to those businesses will be Designation Rights Assets (as defined in the Final APA) subject to designation for post-closing assumption and assignment, or rejection, with the Successful Bidder funding the Debtors' related costs during such post-closing period, all in accordance with the terms of the Final APA and the Sale Order. Although the Purchased Assets include intellectual property, such as certain customer lists or information. I understand that the Debtors do not have a policy prohibiting the transfer of personally identifiable information, if collected, and that they have not disclosed to any individual any such policy in connection with offering their products or services, and that no such policy was in effect on August 9, 2026, the date on which the Debtors commenced these chapter 11 cases.

15. FHG Acquisition, an affiliate of Landry's, is obligated to the Debtors under the Final APA for all obligations of the Purchaser (as such term is defined therein). I understand that

the Successful Bid contemplates the Bond 45, Café Fiorello, and Trattoria Dell'Arte restaurants being owned and operated by Landry's or its affiliates while the Paris Bar, Le Jardin, Café Paradiso, Brooklyn Diner, and Brooklyn Delicatessen restaurants will be owned and operated by TREW or its affiliates.

16. In my opinion, Landry's and TREW are experienced restaurant operators with substantial financial backing that are capable of operating the restaurants they are acquiring in the ordinary course after closing. I understand that Landry's is a diversified restaurant, hospitality, and entertainment operator with hundreds of operating locations in the United States and abroad, and its restaurants include Landry's Seafood House, Rainforest Cafe, The Chart House, Saltgrass Steak House, The Palm, Bubba Gump Shrimp Company, Morton's Steakhouse, McCormick & Schmick's Seafood and Steaks, Mastro's Steakhouse, Del Frisco's, Bill's Bar & Burger, Dos Caminos, Strip House, Joe's Crab Shack, and Mitchell's Fish Market. TREW is a restaurant investment and consulting firm with a focus on acquiring and revitalizing hospitality businesses emerging from bankruptcy or distress. I understand that TREW currently operates 80 restaurants with more than 2,000 employees, and that its investment history includes Bar Louie, Anthony's Coal Fired Pizza, BurgerFi, Rubio's Coastal Grill, and Iron Hill Brewery & Restaurant, and that it or its principals have previously operated or been owners of Famous Dave's, Real Urban BBQ, Clark Crew BBQ, Granite City Food & Brewery, Village Inn, Bakers Square, Tahoe Joe's Steakhouse, Champps, Barrio Queen, and Sauce Pizza & Wine. I understand that TREW is backed by Wexford Capital LP, with ownership stakes in Ascend Prime Steak & Sushi, Aqua Terra Steak & Sushi, as well as other restaurants. Based on the foregoing and on my review of the adequate assurance information that Landry's and TREW each provided to contract counterparties in accordance with the Bidding Procedures Order, it is my opinion that Landry's and TREW have the

financial capacity and the operating experience to perform under the contracts and leases to be assigned to them.

17. Certain non-operating assets of the Debtors, including litigation claims (including any claims against payment processors or merchant cash advance funders), are not Purchased Assets and were not sold at the Auction. I understand that the Debtors continue to evaluate their options with respect to such assets and will separately notice or otherwise seek approval of transactions with respect to such assets if and when appropriate.

## **HIGHEST OR OTHERWISE BEST BID**

18. The Debtors' assets were marketed in accordance with the Bidding Procedures, and that process resulted in the Successful Bid for the Purchased Assets, with cash consideration to the Debtors of $22,237,000, a significant improvement over the $9,500,000 cash consideration of the Stalking Horse Bid, and the assumption of substantial liabilities.

19. I assisted the Debtors, along with their other advisors, with the negotiations of the key economic terms of the Successful Bid. Based on my observation of and participation in those discussions, at all times during the Sale Process and at the Auction, the negotiations were conducted in good faith and on an arm's-length basis. In addition, in my view, the Successful Bidder requires the sale to be free and clear of all liens, claims, interests and encumbrances in order to proceed with the Sale.

20. In my opinion, the Debtors, with the aid of their advisors, thoroughly and fairly marketed the Debtors' assets and conducted the Sale Process and the Auction in accordance with the Bidding Procedures and the Bidding Procedures Order; the timeline of the Sale Process was reasonable and appropriate, particularly in light of the Debtors' liquidity constraints; and the

Bidding Procedures afforded potential bidders sufficient opportunity to conduct diligence of the Debtors' assets and submit bids.

21. I believe that the Debtors, the Successful Bidder and FHGRF acted pursuant to the Bidding Procedures and the Bidding Procedures Order in all respects. I am not aware of any indication of fraud or collusion, or other similar conduct, by or among the Debtors, the Successful Bidder or any other bidder that would taint the Sale Process.

22. To my knowledge after reasonable inquiry, and based on representations made by or on behalf of the Successful Bidder, none of FHG Acquisition, TREW, Landry's, or their respective affiliates is an insider or affiliate of the Debtors or has had any prior business or financial relationship with the Debtors, Sheldon Fireman, Benjamin Grossman, or FHGRF. I understand that, since the Auction, certain officers or employees have received or will receive in advance of the Sale closing offers of post-closing employment from FHG Acquisition or TREW, or their applicable designees, as contemplated by the Final APA, but that no such offer has been made or is expected for the Debtors' chief executive officer. For the avoidance of doubt, no such personnel participated in the Debtors' decisions at the Auction, which were made exclusively by the Debtors' independent director as described above.

23. In my opinion, the Sale reflects a sound exercise of the Debtors' business judgment and is not being undertaken by the Debtors for the purpose of hindering, delaying, or defrauding creditors. Based on my review of the Debtors' financial information and my discussions with the Debtors' management and advisors, the Debtors are operating at a loss and have liquidity only through month end. A prompt sale of the Purchased Assets as a going concern preserves the value of the Debtors' restaurant operations, the jobs of hundreds of employees, and their relationships with landlords and vendors, and avoids the diminution in value that, in my experience,

accompanies a prolonged chapter 11 case or a liquidation of restaurant assets. I am not aware of an alternative transaction, or of a plan process, that would yield greater value for the Debtors' estates within the time available to them.

24. Given the foregoing, including the duration and scope of the Sale Process described above, the due diligence conducted by interested parties, the competitive Auction, and based on my experience, I believe that under the circumstances of these cases the Sale provides fair and reasonable consideration to the Debtors for the Purchased Assets and is the highest or otherwise best transaction reasonably available to the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 20, 2026

*\/s/ Richard Klein*
Richard Klein
Hilco Corporate Finance, LLC